UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MATTEO D'ANELLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:23-cv-10149-JEK |
| SELECT PORTFOLIO SERVICING and | ) | |
| THE BANK OF NEW YORK MELLON | ) | |
| TRUST COMPANY N.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**KOBICK, J.**

Plaintiff Matteo D'Anello filed this action against defendants Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank, N.A., as Trustee, in Trust, for the Holders of Truman Mortgage Loan Trust, 2002-1, Asset-Backed Certificates, 2002-1 (the "Trust"), seeking mainly to forestall foreclosure proceedings on his property in Holliston, Massachusetts. D'Anello alleges that SPS, as the Trust's loan servicer, sent him defective default notices that did not strictly comply with Massachusetts law or the terms of the mortgage contract. He also claims that the Trust is not a valid mortgagee of his property because of an allegedly void assignment in the chain of title. Pending before this Court is the defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. Because the operative default notice is contractually and statutorily compliant and no evidence exists of an invalid assignment, the defendants' motion will be granted.

## BACKGROUND

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to D'Anello, as the non-moving party. *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023).

In September 1996, D'Anello secured a $267,750.00 loan from Fairfield Mortgage Corporation through a mortgage on his property at 684 Adams Street in Holliston, Massachusetts. ECF 23, ¶¶ 1, 2, 4; ECF 17-3; ECF 19-1. Paragraph 21 of the mortgage, which bears on D'Anello's claims in this case, provides in pertinent part:

> 21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.

ECF 23, ¶ 3.

In the years that followed, four assignments of D'Anello's mortgage were recorded in the Middlesex County Registry of Deeds. ECF 19, ¶ 4. First, on September 12, 1996, Fairfield Mortgage Corporation assigned the mortgage to Norwest Bank Minnesota, National Association as Trustee. ECF 19-2. Second, on December 31, 1996, Norwest Bank Minnesota, National Association as Trustee, assigned the mortgage to The Chase Manhattan Bank, as Trustee. ECF 19-3. Third, on July 30, 2001, The Chase Manhattan Bank, as Trustee for Access Financial Mortgage Loan Trust 1996-4—under the Pooling and Servicing Agreement, dated as of November 1, 1996 by and among Access Financial Lending Corp. as Seller and Master Servicer, Access Financial

Receivables Corp as Transferor, and The Chase Manhattan Bank as Trustee—assigned the mortgage to JPMorgan Chase Bank, as Trustee in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1. ECF 19-4. Fourth, on February 20, 2017, JPMorgan Chase Bank, as Trustee in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1, by Select Portfolio Servicing, Inc., It's [sic] Attorney in Fact, assigned the mortgage to The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank, N.A., as Trustee, in Trust, for the Holders of Truman Mortgage Loan Trust, 2002-1, Asset-Backed Certificates, 2002-1. ECF 19-5. The assignee of the fourth assignment is the defendant Trust in this case. SPS, the other defendant, is the Trust's loan servicer. ECF 23, ¶ 6.

      D'Anello defaulted on his loan payments in 2010. *Id.* ¶ 7. In March 2016, SPS, on behalf of the Trust, sent him a "150 Day Right to Cure Your Mortgage Default" notice by certified mail, with return receipt requested, and by first class mail. *Id.* ¶ 8; ECF 17-4. Eighteen months later, in September 2017, D'Anello executed a Lien Modification Agreement with SPS "acting on behalf of the lien holder" to modify the terms of his loan. ECF 23, ¶¶ 9, 11-12; ECF 17-5, at 2. Under the Lien Modification Agreement, D'Anello agreed that "[t]he Lien Documents, as modified by this Agreement, are duly binding agreements, enforceable in accordance with their terms and are hereby reaffirmed." ECF 23, ¶ 10; ECF 17-5, § 3(b). He also agreed that "[a]ll terms of the Lien Documents except as expressly modified by this Agreement . . . remain in full force and effect." ECF 23, ¶ 10; ECF 17-5, § 3(c). The Lien Modification Agreement was between D'Anello and SPS, "acting on behalf of the lien holder," but it did not identify the Trust as the lien holder. ECF 17-5, at 1. D'Anello had, however, previously signed a Forbearance Agreement specifying that the Trust was the "current holder of the Lien." ECF 29, Ex. 3, at 1, ¶ B.

D'Anello eventually defaulted on the modified loan. ECF 23, ¶ 13. In response, SPS, again on behalf of the Trust, sent him a "Notice of Default" by first class mail and certified mail, with return receipt requested, in June 2018. *Id.* ¶ 14; ECF 17-6. D'Anello failed to cure the default. ECF 23, ¶ 15. The Trust then commenced a foreclosure sale of the property on December 7, 2022, but discontinued the sale before it was completed. *Id.* ¶¶ 15-16.

On December 23, 2022, D'Anello filed a complaint in Middlesex Superior Court asserting three claims against the Trust and SPS. ECF 1-1. Count I seeks declaratory judgment that the defendants violated M.G.L. c. 183, § 21 and M.G.L. c. 244, § 35A by failing to provide proper notice of his default prior to foreclosure. *Id.* ¶¶ 33-59. Count II asserts a breach of contract claim for failure to comply with paragraph 21 of the mortgage, which specifies the contents of the notice that must be given before the mortgagee can accelerate the loan and begin foreclosure proceedings. *Id.* ¶¶ 60-101. Count III requests a declaration that the Trust's chain of title to the mortgage is defective. *Id.* ¶¶ 102-14. In January 2023, the defendants removed the case to this Court on the basis of diversity jurisdiction. ECF 1.[1]

On July 31, 2023, SPS, once again on behalf of the Trust, sent D'Anello an updated "90-Day Right to Cure Your Mortgage Default" notice by certified mail, with return receipt requested, and by first class mail. ECF 23, ¶ 17; ECF 17-7. The body of the default notice conformed to the template notice prescribed by the Division of Banks at 209 Code Mass. Regs. 56.04, which

---

[1] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, as the complaint demands $700,000 and the original principal amount of the mortgage is $267,750. ECF 1-1, at 2; ECF 23, ¶ 1; *see McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212-13 (1st Cir. 2012). There is also complete diversity of citizenship. D'Anello is a citizen of Massachusetts. ECF 1-1, at 6, ¶ 5. SPS is incorporated and has its principal place of business in Utah. ECF 1, ¶ 6. And the Trust is a national banking organization whose articles of association designate California as its main office. *Id.* ¶ 7; *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).

implements M.G.L. c. 244, § 35A. *Compare* ECF 17-7, *with* 209 Code Mass. Regs. 56.04. The notice stated that "[t]he mortgage on [D'Anello's] property is in default as a result of [his] failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument)," and that he "must pay the past due amount of $171,947.26 on or before November 1, 2023, which is 90 days from the date of this notice." ECF 23, ¶ 18; ECF 17-7, at 5, 9. It further stated:

> If we do not receive the past due amount by the date listed in the notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require the immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default on or before November 1, 2023 may result in acceleration of sums secured by the Security Instrument and sale of the Property.

ECF 23, ¶ 18; ECF 17-7, at 9. The default notice also detailed D'Anello's rights, including his "right to bring a court action to assert the non-existence of a default or any other defense [he] may have to acceleration and sale" and his "right to reinstate after acceleration of [his] loan." ECF 23, ¶ 18; ECF 17-7, at 9. The notice added that "[i]f [he] reinstate[s], the Security Instrument shall remain fully effective as if no acceleration had occurred." ECF 23, ¶ 18; ECF 17-7, at 9.

Following a period of discovery, the defendants moved for summary judgment. ECF 14. After receiving D'Anello's opposition and the defendants' reply, the Court held a hearing and took the motion under advisement. ECF 22, 28, 32.

## STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual

5

determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou*, 86 F.4th at 458 (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The non-moving party may not simply "rest upon mere allegation or denials," but instead must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## DISCUSSION

**I.    The Operative Default Notice Complies with the Terms of the Mortgage and Massachusetts Law.**

Counts I and II of the complaint allege that the defendants issued defective default notices that failed to comply with M.G.L. c. 183, § 21, M.G.L. c. 244, § 35A, and the terms of the mortgage contract. The defendants have sent D'Anello three default notices: (1) one in March 2016, before D'Anello signed a Lien Modification Agreement in September 2017; (2) a second in June 2018, before the discontinued December 2022 foreclosure sale; and (3) a third in July 2023, after the commencement of this lawsuit. While D'Anello previously alleged deficiencies in the March 2016 and June 2018 notices, he represented at the summary judgment hearing that his challenges to the earlier notices became moot after SPS sent him the operative default notice in July 2023. In line with this concession, which amounts to a waiver of his claims challenging the March 2016 and

June 2018 notices,[2] the Court considers only whether the July 2023 default notice comported with the terms of D'Anello's mortgage and with the statutory requirements.[3]

As "a non-judicial foreclosure state," Massachusetts "allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that

---

[2] D'Anello's complaint sought equitable relief and damages, including the "cancellation costs and fees assessed . . . for wrongful foreclosure" in December 2022. ECF 1-1, ¶¶ 112, 114. The initiation or completion of a foreclosure sale does not moot a claim challenging that sale where the "complaint, in part, prays for money damages as a means of ameliorating the asserted wrong." *Demelo v. U.S. Bank Nat'l Ass'n*, 727 F.3d 117, 124-25 (1st Cir. 2013); *see also Dyer v. Wells Fargo Bank, N.A.*, 956 F.3d 62, 65 n.2 (1st Cir. 2020). But here, D'Anello has failed to present evidence that he incurred damages or paid fees or costs in connection with the discontinued December 2022 foreclosure. To defeat a properly supported motion for summary judgment, the non-moving party must present affirmative evidence. *See Anderson*, 477 U.S. at 257; *Rodriguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, No. 23-1929, 2025 WL 274217, at *1 (1st Cir. Jan. 23, 2025). Because D'Anello has offered no evidence of any damages, costs, or fees incurred in connection with the allegedly defective March 2016 and June 2018 default notices that preceded the December 2022 foreclosure, and because he concedes that the July 2023 notice is now the only operative notice, the defendants would be entitled to summary judgment on D'Anello's claims challenging the earlier notices, even absent his concession. *See, e.g., Frangos v. Bank of Am., N.A.*, No. 13-cv-472-PB, 2015 WL 6829104, at *2 (D.N.H. Nov. 6, 2015) (rejecting breach of contract claim "alleg[ing] that the defendants violated paragraph 22 of the mortgage by failing to provide the required default notice before accelerating the loan and initiating foreclosure when they first attempted to foreclose in 2011" because plaintiffs admittedly "sustained no financial damages" and "it [was] beyond dispute that [they] suffered no compensable monetary damages"), *aff'd*, 826 F.3d 594 (1st Cir. 2016); *Neuro-Rehab Assocs., Inc. v. Amresco Com. Fin., LLC*, No. 05-cv-12338-GAO, 2009 WL 649584, at *20, *30 (D. Mass. Mar. 12, 2009) (granting summary judgment for defendant where there was "no evidence of damages resulting specifically from the attempted acceleration of the Note").

[3] D'Anello's claims challenging the July 2023 notice and chain of title are ripe for review. A claim is not ripe if it "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *City of Fall River v. F.E.R.C.*, 507 F.3d 1, 6 (1st Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Now that D'Anello's November 1, 2023 deadline to cure the default has come and gone, he faces a reasonable likelihood of acceleration and foreclosure. Indeed, the defendants have previously attempted to foreclose on his property, and at the summary judgment hearing, the defendants maintained that because, in their view, the July 2023 default notice was lawful, they can now accelerate D'Anello's mortgage and again initiate foreclosure proceedings. Consequently, D'Anello faces sufficient hardship and there exists a present controversy between the parties that is fit for resolution. *See Gun Owners Action League, Inc. v. Swift*, 284 F.3d 198, 205 (1st Cir. 2002) ("[T]he doctrine of ripeness . . . asks whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial review." (quotation marks omitted)).

right by reference to the statutory power of sale." *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 291 (2020) (quotation marks omitted). To exercise that "statutory power of sale," a mortgagee must "first compl[y] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." M.G.L. c. 183, § 21. "Because of the 'substantial power . . . to foreclose in Massachusetts without judicial oversight,'" the Supreme Judicial Court "repeatedly ha[s] emphasized that 'one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void.'" *Thompson*, 486 Mass. at 291 (quoting *Fed. Nat'l Mortg. Ass'n v. Marroquin*, 477 Mass. 82, 86 (2017)).

The "regime of strict compliance" does not, however, require the "mortgagee to 'demonstrate punctilious performance of every single mortgage term.'" *Id.* at 292 (quoting *Pinti v. Emigrant Mortg. Co.*, 474 Mass. 226, 235 (2015)). The mortgagee must demonstrate strict compliance with "'(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale—whether before or after the sale takes place.'" *Id.* at 292 (quoting *Pinti*, 472 Mass. at 235). Strict compliance is not mandated for other requirements, including, as relevant here, the pre-acceleration notice requirements set forth in M.G.L. c. 244, § 35A. *Id.* at 292-93; *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 422 (2014). Section 35A guarantees mortgagors the right to cure a default by making "full payment of all amounts that are due" within 90 days, during which time the mortgagee cannot "accelerate" the mortgage obligation—that is, demand full payment of the loan—and begin foreclosure proceedings on the property. M.G.L. c. 244, § 35A(a)-(b). The statute also prescribes the content of the notice that must be given for this 90-day right to cure. *Id.* § 35A(c); *see Thompson*, 486 Mass. at 289. Such notices must inform the

8

borrower of, among other things, their right to cure the default, the amount owed, the date before which they must cure, and the fact that failure to cure may result in acceleration and foreclosure. M.G.L. c. 244, § 35A(c). Since Section 35A "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced," the right to cure "is a preforeclosure undertaking" that does not "'relat[e] to the foreclosure of mortgages by the exercise of a power of sale.'" *Schumacher*, 467 Mass. at 431 (quoting M.G.L. c. 183, § 21). To implement Section 35A, the Division of Banks "has issued regulations specifying the precise form that this notice must take." *Thompson*, 486 Mass. at 289 (citing 209 Code Mass. Regs. 56.04).

In *Thompson*, the Supreme Judicial Court described what is known as a "hybrid notice"— that is, one that provides the borrower with the notice required by Section 35A and the notice required by paragraph 21 of D'Anello's mortgage. *Id.* at 292-93; *see also id.* at 294-95 (noting that the paragraphs "of the GSE Uniform Mortgage are better served by a single accurate notice rather than two potentially conflicting communications"); *Diplomat Prop. Manager, LLC v. Wilson*, 99 Mass. App. Ct. 1104 (2020) (Rule 23.0 decision) (describing hybrid notices as "permitted, and even preferred").[4] Paragraph 21 of D'Anello's mortgage states, in pertinent part, that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court

---

[4] Paragraph 21 of D'Anello's mortgage is the same as paragraph 22 of the standard form mortgage provided by the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) analyzed in *Pinti*. Compare ECF 17-3, ¶ 21, *with Pinti*, 472 Mass. at 228 n.6, 236 n.16.

9

> action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.

ECF 23, ¶ 3. Because the provisions of this paragraph "constitute 'terms of the mortgage' governing the power of sale," the mortgagee must "comply strictly" with paragraph 21's "notice of default provisions" in any hybrid notice. *Pinti*, 472 Mass. at 240; *see Thompson*, 486 Mass. at 292 n.7. These provisions must "be accurate and not deceptive." *Thompson*, 486 Mass. at 293. Those portions of the hybrid notice addressing the notice provisions required by Section 35A are not, however, held to the same standard of strict compliance. *Id.* at 292 n.7.

The parties agree that the July 2023 default notice is a "hybrid notice" sent to satisfy the Trust's obligations under paragraph 21 of the mortgage contract and M.G.L. c. 244, § 35A. *See Thompson*, 486 Mass. at 292-93; ECF 15, at 8-10. The parties further agree that the July 2023 default notice strictly complies with paragraphs 21(a) and 21(b) of the mortgage and adheres to the corresponding provisions of M.G.L. c. 244, § 35A and 209 Code Mass. Regs. 56.04. Consistent with paragraph 21(a), the notice states that the "mortgage on [D'Anello's] property is in default as a result of [his] failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument)." ECF 23, ¶¶ 3, 18. And per paragraph 21(b), the notice describes how he can avoid foreclosure by "pay[ing] the past due amount of $171,947.26." *Id.* The parties also agree that the notice strictly complies with the last sentence of the above excerpt from paragraph 21 and thus M.G.L. c. 183, § 21. *Id.* ¶ 3. Specifically, the notice discloses that D'Anello has "the right to reinstate after acceleration of [his] loan" and "the right to bring a court action to assert the non-existence of a default or any other defense [he] may have to acceleration and sale." *Id.* ¶ 18.

The parties part ways on whether the July 2023 default notice strictly complies with paragraphs 21(c) and 21(d) of the mortgage. The notice states that D'Anello "must pay the past due amount of $171,947.26 on or before November 1, 2023, which is 90 days from the date of this

notice," and that "failure to cure the default on or before November 1, 2023 may result in acceleration of sums secured by the Security Instrument and sale of the Property." *Id.* On its face, this language strictly complies with paragraphs 21(c) and 21(d) because the date provided is, as required, "not less than 30 days from the date the notice [was] given," and it specifies that his loan may accelerate if he fails to cure the default. *Id.* ¶ 3. D'Anello disputes that conclusion, contending that the July 31, 2023 notice falsely states that "November 1, 2023 . . . is 90 days from the date of this notice," when, in fact, 90 days from July 31 was October 30, 2023. ECF 22, at 15; ECF 17-7.[5] In his telling, the notice was deceptive because it could have led him to believe, incorrectly, that his right to cure expired on October 30, rather than November 1, and thus miss the opportunity to cure his default on October 31 or November 1.

This argument misses the mark because either the October 30 or November 1 dates would afford him far more than the 30 days strictly required by section 21(c) of the mortgage. *See O'Brien v. Nationstar Mortg. LLC*, No. 23-cv-10774-LTS, 2023 WL 5438792, at *2 (D. Mass. July 25, 2023) (rejecting similar challenge where borrower was provided "well more than the thirty days strictly required by the mortgage"). The 90-day cure period derives from M.G.L. c. 244, § 35A, not from paragraph 21 of D'Anello's mortgage, and therefore is not subject to the strict compliance standard. *See Thompson*, 486 Mass. at 292 n.7. Nor is there any evidence that D'Anello wished to or in fact attempted to cure the default on either October 30 or November 1, 2023. *See* ECF 23, ¶¶ 15-17. His "unsupported speculation" that he might have been deceived by the two-day differential is insufficient to defeat summary judgment. *Dixon-Tribou*, 86 F.4th at 458 (quotation

---

[5] Ninety days from July 31, 2023 was October 29, 2023, a Sunday. D'Anello is correct, however, that October 30, 2023, a Monday, would have been the first business day past the 90-day mark.

marks omitted).⁶ The defendants are thus entitled to summary judgment on D'Anello's claims in Counts I and II that the July 2023 notice is inaccurate or deceptive, because the notice complies with both Massachusetts law and the mortgage contract.

## II.    D'Anello's Assignment Arguments Lack Evidentiary Support and Are Estopped.

Count III of the complaint seeks a declaration that, due to a defective assignment of D'Anello's mortgage in July 2001, the Trust is not a valid mortgagee of his property. ECF 1, ¶¶ 102-14. In Massachusetts, borrowers like D'Anello can "assert defects in the chain of mortgage assignments" if those defects "rende[r] the assignment[s] void." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 157 (1st Cir. 2017) (citing *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 502-03 (2014)). The governing statute provides that an "assignment of [a] mortgage . . . executed before a notary public . . . by a person purporting to hold the position of president, vice president, . . . or other officer . . . of the entity holding such mortgage . . . shall be binding upon such entity." M.G.L. c. 183, § 54B. In other words, if "the assignment is (1) made by the mortgage holder or its representative, (2) executed before a notary public, and (3) signed by an authorized employee of the mortgage holder, it is effective to pass legal title and 'cannot be shown to be void.'" *Giannasca*

---

⁶ D'Anello does not expressly argue that the notice also fails to comply with the "lesser requirements" of M.G.L. c. 244, § 35A, but that argument too would fail. *Thompson*, 486 Mass. at 292 n.7. Section 35A provides that a notice must include "the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 90 days after service of the notice." M.G.L. c. 244, § 35A(c)(2). Pursuant to the mortgage, notice is served or "given to Borrower" either "by delivering it or by mailing it by first class mail." ECF 19-1, §§ 14, 21. Here, SPS sent the notice to D'Anello by first class mail, which provided him at least 90 days to cure. ECF 23, ¶¶ 17-18. The defendants would also not have violated section 35A unless they sought to accelerate the loan before the ninetieth day, but there is again no evidence of that in the record. *See O'Brien*, 2023 WL 5438792, at *2 n.2; ECF 23, ¶¶ 15-17.

12

*v. Deutsche Bank Nat'l Tr. Co.*, 95 Mass. App. Ct. 775, 778 (2019) (quoting *Wain*, 85 Mass. App. Ct. at 503).

D'Anello contends that the July 30, 2001 assignment of his mortgage from The Chase Manhattan Bank, as Trustee to JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1 is void because the identity of the assignee was allegedly left blank at the time of the assignment. *See* ECF 19-4.[7] The assignment in evidence clearly identifies JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1 as the assignee. *Id.* But D'Anello speculates that the identity of the assignee was originally left blank because the font of the assignee differs from the font used in the rest of the assignment. ECF 22, at 17. He seeks to bolster this argument with a separate document in the record, a December 2014 agreement in which The Bank of New York Mellon f/k/a The Bank of New York, Successor in Interest to JP Morgan Chase Bank, as Trustee granted a limited power of attorney to SPS. *Id.*; ECF 17-1. Schedule A to that agreement references a "Pooling and Servicing Agreement, dated as of January 31, 2002, among Truman Capital Securitization, LLC, as Depositor, Select Portfolio Servicing, Inc., f/k/a Fairbanks Capital Corp., as Servicer and JP Morgan Chase Bank, as Trustee, which relates to the Truman Capital Mortgage Loan Trust 2002-1 Asset-Backed Certificates, Series 2002-1." ECF 17-1, at 6. From this reference, D'Anello claims that JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed

---

[7] D'Anello had separately argued that the chain of title was defective because the assignee of the December 31, 1996 assignment was allegedly different than the assignor of the subsequent assignment, on July 30, 2001. ECF 22, at 18; ECF 23, ¶ 5. At the summary judgment hearing, D'Anello's counsel conceded that this argument lacked merit because "Chase Manhattan Bank, as Trustee" is listed as assignee of the December 1996 assignment and assignor of the July 2001 assignment. *See* ECF 19-3, ECF 19-4.

Certificates, Series 2002-1 was *created* on January 31, 2002, by this Pooling and Servicing Agreement, and that the identity of the assignee on the July 30, 2001 assignment must, therefore, have originally been left blank.

The Supreme Judicial Court has "long held a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; [it] do[es] not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 652 (2011); *see Southbridge RE, LLC v. Kiavi Funding, Inc.*, 109 F.4th 86, 89 (1st Cir. 2024). But D'Anello's contention that the assignee was not named in the July 30, 2001 assignment lacks the evidentiary support needed to give rise to a genuine dispute of material fact under Rule 56. D'Anello has presented no affirmative evidence that the July 30, 2001 assignment in fact left the identity of the assignee blank. His argument about the typeface of the assignee in the assignment is "unsupported speculation." *Dixon-Tribou*, 86 F.4th at 458 (quotation marks omitted). And he has presented no evidence that the assignee listed on the assignment—JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1—did not come into existence until after the assignment. The reference to the January 31, 2002 Pooling and Servicing agreement on the December 2014 power-of-attorney agreement does not say that the January 31, 2002 Pooling and Servicing agreement *created* JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1. *See* ECF 17-1, at 6. Nor is that Pooling and Servicing agreement in the record. D'Anello has thus proffered no evidence that JPMorgan Chase Bank, as Trustee, in Trust for the Holders of Truman Mortgage Loan Trust 2002-1, Asset-Backed Certificates, Series 2002-1 was omitted as assignee as of the

date of the July 30, 2001 assignment. Absent "affirmative evidence," D'Anello's "mere allegation[s]" are insufficient to withstand summary judgment. *Anderson*, 477 U.S. at 256-57.[8]

Nevertheless, even if there were affirmative evidence of a void 2001 assignment, D'Anello would be estopped from challenging the Trust's standing to foreclose because he reaffirmed the validity of the mortgage when he signed the Lien Modification Agreement in 2017. To establish estoppel, the defendants must show "'(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'" *Barrasso v. New Century Mortg. Corp.*, 91 Mass. App. Ct. 42, 48 (2017) (quoting *Reading Co-Op. Bank v. Suffolk Constr. Co.*, 464 Mass. 543, 556 (2013)). In *Barrasso*, the Massachusetts Appeals Court held that a borrower who entered into a loan modification agreement and obtained the benefit of that modification was estopped from later challenging ownership of the mortgage. *Id.* Here, too, D'Anello received a new principal balance and a reduced interest rate in the agreed-upon modification. ECF 23, ¶¶ 11-12. The modification further stated that the "Lien Holder continues to have an enforceable lien on the Property." ECF 17-5, at 2. And D'Anello agreed that "[t]he Lien Documents, as modified by this Agreement, are duly binding agreements, enforceable in accordance with their terms and are hereby reaffirmed," and that "[a]ll terms of the Lien Documents except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code,

---

[8] D'Anello also seeks additional discovery because he had not seen the December 2014 power-of-attorney agreement before the defendants moved for summary judgment. ECF 22, at 4 n.1, 17 n.2. But as the defendants point out, that document is a matter of public record, and D'Anello failed to serve document requests on the defendants or meaningfully engage in discovery. ECF 28, at 12. Because D'Anello has not shown that he has exercised "due diligence in pursuing discovery *before* [the] motion for summary judgment [was] filed," nor has he submitted a motion under Federal Rule of Civil Procedure 56(d) "for additional discovery *after* the summary judgment motion [was] filed," his procedurally improper and substantively insufficient request is denied. *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 121 (1st Cir. 2024).

Case 1:23-cv-10149-JEK   Document 33   Filed 02/11/25   Page 16 of 17

remain in full force and effect." ECF 23, ¶ 10. Thus, as in *Barrasso*, D'Anello "cannot now escape enforcement of [his] mortgage by questioning [the Trust's] ownership of it as of the effective date of the modification." 91 Mass. App. Ct. at 48.[9]

D'Anello counters that *Barrasso* is inapposite because there, unlike here, the modification agreement identified the mortgagee. *See id.* at 47 (defining "Lender/Grantee" as "LaSalle in its capacity as trustee for the C-Bass trust"). In this case, the modification merely states that the agreement is between D'Anello and SPS "acting on behalf of the lien holder." ECF 17-5, at 2. The exclusion of the Trust's name from the Lien Modification Agreement is immaterial, however, because D'Anello had previously been put on notice that the Trust was the lien holder. The March 2016 default notice identified the Trust as the mortgagee, ECF 17-4, at 4, and in February 2009, D'Anello had signed a forbearance agreement acknowledging that the Trust is the "current holder of the Lien," ECF 29, Ex. 3, at 1. By agreeing in the modification that the unnamed, but previously disclosed, lien holder has "an enforceable lien" on his property and by reaffirming the enforceability of the underlying lien documents, ECF 17-5, at 2, D'Anello is estopped "from disputing the state of the title as to the . . . mortgage as of the date of the modification agreement," *Barrasso*, 91 Mass. App. Ct. at 46; *see Linn v. Option One Mortg.*, No. 1:22-cv-11535-IT, 2024 WL 199784, at *5 (D. Mass. Jan. 17, 2024) ("Plaintiff cannot now claim that a mortgage loan that was signed in 2004 and re-signed in 2013 was unconscionable from the start" after she "reaffirmed the terms of the mortgage loan in 2013 when she obtained a loan modification."). The defendants are, accordingly, entitled to summary judgment on Count III.

---

[9] Since estoppel applies, the Court need not address the defendants' additional argument that D'Anello cannot "'raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment.'" *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016) (quoting *Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006)).

16

## CONCLUSION AND ORDER

For the foregoing reasons, the defendants' motion for summary judgment, ECF 14, is GRANTED.

SO ORDERED.

Dated: February 11, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE